```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

CARMEN ORTEGA,
    Petitioner,

    v.                                         CIVIL ACTION NO.
                                                                                  11-10358-MBB

THOMAS HODGSON, Sheriff Bristol
County House of Corrections,
    Respondent.


**MEMORANDUM AND ORDER RE:**
**PETITION FOR WRIT OF HABEAS CORPUS**
**(DOCKET ENTRY # 1)**

**September 13, 2011**

**BOWLER, U.S.M.J.**

    Petitioner Carmen Ortega ("petitioner") has been in the custody of Immigration and Customs Enforcement ("ICE") since November 17, 2009, pursuant to 8 U.S.C. § 1226(c) ("section 1226(c)") awaiting the administrative adjudication of deportation proceedings.  On March 2, 2011, she filed a petition for writ of habeas corpus ("the petition") under 28 U.S.C. § 2241.  (Docket Entry # 1).

    Petitioner, housed at the Bristol County House of Corrections, argues that her prolonged detention, which exceeded 15 months in March 2011, is unreasonable and violates her right to due process.  (Docket Entry ## 1 & 16).  Respondent Thomas Hodgson ("respondent"), Sheriff of the Bristol County House of Corrections, and Bruce Chadbourne, the Boston Field Office

Director of ICE, filed an answer and response to the petition.[1] (Docket Entry # 12). On May 6, 2011, this court heard oral argument and took the matter under advisement.

BACKGROUND

Petitioner was born in 1949 and admitted to the United States as a lawful permanent resident ("LPR") on January 29, 1969. (Docket Entry # 1, Ex. 4). On June 9, 2008, petitioner pleaded nolo contendere to possession of a schedule I-V controlled substance under Rhode Island General Laws section 21-28-4.01(c)(1) and received a three year suspended sentence. (Docket Entry # 1, Ex. 5). On August 8, 2008, petitioner was charged with a second offense for possession of a schedule I-V controlled substance under Rhode Island General Laws section 21-28-4.01(c)(1). (Docket Entry # 1, Ex. 6). Petitioner originally pleaded not guilty. (Docket Entry # 1, Ex. 6). On October 20, 2009, petitioner retracted her not guilty plea and pleaded nolo contendere. (Docket Entry # 1, Ex. 6). The Rhode Island state court sentenced petitioner to one year of imprisonment and additionally imposed a five year suspended sentence. (Docket Entry # 1, Ex. 5).

---

[1] Petitioner names Thomas Hodgson and Bruce Chadbourne in the petition. In response to a March 14, 2011 show cause order, they stipulated to naming Thomas Hodgson as the sole respondent. (Docket Entry # 12).

On November 17, 2009, upon completion of the one year sentence,[2] the United States Department of Homeland Security ("DHS") issued and executed an arrest warrant. (Docket Entry # 12, Ex. 6). Petitioner was transferred to DHS custody for removal proceedings pursuant to section 1226(c). (Docket Entry # 12, Ex. 6).

On December 1, 2009, petitioner first appeared before an immigration judge ("IJ"). The IJ recommended that petitioner request a continuance to find an attorney, which petitioner agreed to seek during the proceeding. The IJ scheduled a further conference for December 15, 2009. (Docket Entry # 12, Ex. 16, p. 8). On December 15, 2009, petitioner appeared before the IJ for a second time without representation and requested another continuance to find an attorney. (Docket Entry # 12, Ex. 16, p. 12). The IJ allowed the continuance. (Docket Entry # 12, Ex. 16, p. 12).

At petitioner's third appearance before the IJ on January 5, 2010, she claimed she could not afford private counsel and had yet to secure one willing to take her case from the court's pro bono list. (Docket Entry # 12, Ex. 16, pp. 15-16). The IJ assigned the case to an attorney present in the courtroom ("petitioner's counsel") who agreed to represent petitioner pro

---

[2] When petitioner pleaded guilty to the second offense, her time of incarceration during the criminal proceedings was considered part of the time served on the one year sentence.

bono. (Docket Entry # 12, Ex. 16, p. 17). In light of the appointment of counsel, the IJ continued the case for two weeks, as opposed to one week, at the request of petitioner's counsel. (Docket Entry # 12, Ex. 16, p. 19).

On January 19, 2010, at petitioner's fourth appearance, petitioner's counsel raised concern about her ability to represent petitioner because she was not licensed to practice in Rhode Island where the offenses occurred. (Docket Entry # 12, Ex. 16, p. 21). Petitioner's counsel, who had not yet filed an appearance, advised the IJ that she had spoken with an individual who operated the Roger Williams Law School Clinic willing to represent petitioner. (Docket Entry # 12, Ex. 16, p. 22). Petitioner's counsel then requested another continuance and the court scheduled a further conference for February 2, 2010. (Docket Entry # 12, Ex. 16, p. 24).

On February 2, 2010, Mary Holper, Esq. ("Holper") of the Roger Williams Law School Clinic accompanied petitioner to her fifth appearance before the IJ. At this proceeding, Holper submitted an appearance and requested two weeks to file pleadings. (Docket Entry # 12, Ex. 16, pp. 27-28). The IJ allowed the request for a continuance. (Docket Entry # 12, Ex. 16, p. 28).

At petitioner's sixth appearance on February 16, 2010, Holper submitted petitioner's pleadings. She conceded

removability and sought a cancellation of removal.  Holper then asked the IJ for three weeks in which to file an application ("42(a) application") to cancel removal under 8 U.S.C. § 1229(b). (Docket Entry # 12, Ex. 16, p. 31).

On March 9, 2010, petitioner, represented by Holper, appeared before the IJ for the seventh time, filed a 42(a) application for cancellation of removal (Docket Entry # 12, Ex. 9) and requested a hearing on the merits of the application. (Docket Entry # 12, Ex. 16, pp. 36-39).  The IJ scheduled the hearing for April 13, 2010.[3]  (Docket Entry # 12, Ex. 16, p. 39).

The merits hearing took place on April 13, 2010.  (Docket Entry # 12, Ex. 16, pp. 40-42).  At the hearing, Holper requested an opportunity to file a number of documents.  (Docket Entry # 12, Ex. 16, p. 41).  The IJ allowed the late filing.  (Docket Entry # 12, Ex. 16, p. 42).

On April 21, 2010, the IJ rendered a decision on the merits hearing.  (Docket Entry # 12, Ex. 10).  In the decision, the IJ found that petitioner met her burden of proof.  The IJ determined that petitioner had not been convicted of an aggravated felony, was credible in her testimony, and the positive factors outweighed the negative factors in the case.  (Docket Entry # 12, Ex. 10, p. 3).  The IJ noted that the positive factors included

---

[3]  Thus, the delay from the start of petitioner's ICE custody in November 2009 up until April 2010 was due to petitioner's efforts to obtain representation and her counsel's requests for continuances.

family ties in the United States,[4] 41 years of residence in the United States as an LPR and a strong work history.  The IJ also found that removal would be a hardship.  (Docket Entry # 12, Ex. 10, pp. 3-6).

On June 29, 2010, DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), arguing that petitioner was an aggravated felon and therefore ineligible for cancellation of removal.  (Docket Entry # 12, Ex. 11).  In an October 18, 2010 decision, the BIA found that petitioner failed to meet her burden of proof to show she was not an aggravated felon and remanded the case for further proceedings consistent with the BIA's decision that petitioner was ineligible for cancellation of removal.  (Docket Entry # 12, Ex. 2).

On November 23, 2010, the IJ found that petitioner had not met her burden of proving that the aggravated felony bar did not apply to her case and entered an order to remove her from the United States to the Dominican Republic.  (Docket Entry # 12, Ex. 12, p. 3).  On December 20, 2010, petitioner appealed the IJ's November 23, 2010 order to the BIA, contending that her offenses did not constitute an aggravated felony.  (Docket Entry # 1, Ex. 14).

---

[4]  Petitioner has five adult children, 14 grandchildren and one great grandchild, all of whom are United States citizens. (Docket Entry # 1, Ex. 4, ¶ 8).

On February 1, 2011, Elizabeth Badger, Esq. of the Boston University Litigation Program ("BULP counsel")[5] sent a letter to respondent and Richard Lenihan, an ICE deportation officer, requesting petitioner's release "while the merits of her appeal are adjudicated." (Docket Entry # 1, Ex. 3). BULP counsel stated in the letter that, if released, petitioner would comply with any reasonable orders of supervision. (Docket Entry # 1, Ex. 3). As set forth in the letter, BULP counsel argued that petitioner's prolonged detention was unreasonable. The letter also requested a response by February 18, 2011. According to petitioner, she never received a response. (Docket Entry # 1, ¶ 13).

On February 9, 2011, Holper requested on petitioner's behalf that the BIA grant an additional three week extension to submit petitioner's appellate brief. (Docket Entry # 1, Ex. 16). On February 10, 2011, the BIA allowed the request and extended the due date of petitioner's and DHS' briefs from February 22 until March 15, 2011. (Docket Entry # 1, Ex. 17). Without awaiting a decision from the BIA, petitioner filed this petition on March 2, 2011. (Docket Entry ## 1 & 2).

DISCUSSION

I. Jurisdiction

---

[5] BULP counsel is petitioner's counsel of record in these proceedings.

7

Petitioner maintains that her continued detention violates section 1226 "as limited by Constitutional Due Process concerns." (Docket Entry # 1, ¶ 31). Section 1226 reads as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation or denial of bond or parole.

8 U.S.C. § 1226(e). "[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." Webster v. Doe, 486 U.S. 592, 603 (1988). A challenge to the constitutionality of prolonged mandatory detention is not a challenge to the Attorney General's "discretionary judgment" or "decision." Demore v. Kim, 538 U.S. 510, 517 (2003). Following the majority in Demore,[6] this court therefore has the jurisdiction to hear petitioner's challenge to the constitutionality of her prolonged mandatory detention. Demore, 538 U.S. at 517.

II. Exhaustion of Administrative Remedies

Respondent argues that this court should deny the petition because petitioner remains in removal proceedings and has not received a final order. (Docket Entry # 12). Petitioner

---

[6] The concurrence in Demore, however, disagrees on the issue of jurisdiction and raised concern with the majority's interpretation of section 1226(e), finding "there is simply no reasonable way to read this language other than as precluding all review, including habeas review." Demore, 538 U.S. at 537 (Kennedy, J., concurring).

contends that she exhausted her administrative remedies as a result of her February 1, 2011 letter requesting release. (Docket Entry # 1, Ex. 3). The letter requested a response by February 18, 2011, but petitioner failed to receive a response. Accordingly, petitioner characterizes any further attempts to exhaust administrative remedies as futile. (Docket Entry # 1, ¶¶ 14-15). As of the March 2011 filing of the petition, the issue of whether petitioner is an aggravated felon remained on appeal before the BIA.[7] (Docket Entry # 12, Ex. 14).

As previously explained, the BIA determined on October 18, 2010, that petitioner was an aggravated felon. (Docket Entry # 12, Ex. 2). After the remand and the IJ's November 23, 2010 decision (Docket Entry # 12, Ex. 12), petitioner filed an appeal with the BIA challenging the BIA's prior determination. (Docket Entry # 1, Ex. 14). As stated in 8 U.S.C. § 1252(d) ("section 1252(d)"), "A court may review a final order of removal only if-- (1) the alien has exhausted all administrative remedies available to the alien as of right."

In the case at bar, petitioner challenges the length of her detention as unreasonable and as a violation of her constitutional rights to due process. She seeks an immediate release from custody subject to reasonable conditions of supervision or a hearing requiring respondent to justify

---

[7] The status of the appeal at present is unclear.

petitioner's continued detention.  She therefore does not challenge the merits of a final order of removal but rather seeks both a determination regarding the constitutionality of her prolonged detention and a release subject to supervisory conditions similar to a bail or bond determination.  As explained by the court in Campbell v. Chadbourne, 505 F.Supp.2d 191 (D.Mass. 2007), such a determination is not subject to section 1252(d)(1):

> Thus, while exhaustion of administrative remedies is required pursuant to 8 U.S.C. § 1252(d)(1) in order to challenge final orders of removal, "this provision does not cover challenges to preliminary custody or bond determinations, which are quite distinct from 'final order[s] of removal.'"

Id. at 197 (quoting Gonzales v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004)).

Petitioner also correctly argues that requiring further administrative exhaustion would be futile.  Futility provides an adequate basis to excuse exhaustion.  See Sengkeo v. Horgan, 670 F.Supp.2d 116, 122 (D.Mass. 2009) (discussing futility as exception to administrative exhaustion under section 1226); accord Flores-Powell v. Chadbourne, 677 F.Supp.2d 455, 463 (D.Mass. 2010) (noting lack of exhaustion requirement under section 1226 in certain circumstances).  The BIA lacks authority to adjudicate constitutional questions.  Flores-Powell v. Chadbourne, 677 F.Supp.2d at 463 (noting "the BIA's lack of authority to adjudicate constitutional questions").  The BIA also

adheres to the position that section 1226(c) mandates detention without bond and thus has "repeatedly upheld the denial of a bond hearing." Sengkeo v. Horgan, 670 F.Supp.2d at 122. Consequently, similar to the petitioner in Flores-Powell, "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation of the mandatory detention statute." Flores-Powell v. Chadbourne, 677 F.Supp.2d at 463.

Furthermore, where, as here, exhaustion is not explicitly mandated, courts may hear unexhausted claims in "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" Flores-Powell, 677 F.Supp.2d at 463 (citing Portela-Gonzalez v. Secretary of the Navy, 109 F.3d 74, 77 (1st Cir. 1997), quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)). Such circumstances exist where "the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim.'" Flores-Powell, 677 F.Supp.2d at 463 (quoting McCarthy v. Madigan, 503 U.S. at 147). A loss of liberty may be considered an irreparable harm. See Flores-Powell v. Chadbourne, 677 F.Supp.2d at 463 (citing Bois v. Marsh, 801 F.2d 462, 468 (D.C.Cir. 1986)).

In exercising the discretion to excuse exhaustion, the court must consider whether the "twin purposes of protecting

administrative agency authority and promoting judicial efficiency" are outweighed by a petitioner's interest in immediate adjudication of his claim by the court.  See Flores-Powell, 677 F.Supp.2d at 464 (review of alien's habeas petition prior to a final order did not undermine the administrative authority or judicial efficiency).  Here, requiring exhaustion of the administrative process, where Congress has not explicitly mandated such a requirement, would contribute to the delay petitioner has already experienced in attempting to resolve her immigration status.  See Vongsa v. Horgan, 670 F.Supp.2d 116, 123 (D.Mass. 2009) (excusing alien petitioner's failure to exhaust administrative remedies because exhaustion would be futile) (citing McCarthy, 503 U.S. at 146-47) (noting that "requiring resort to the administrative remedy may occasion undue prejudice . . . [such as] an unreasonable or indefinite timeframe for administrative action").

In sum, this court finds that petitioner is not required to exhaust administrative remedies and that such exhaustion is futile.

III.  Applicability of the Mandatory Detention Statute

Respondent argues that the mandatory detention provisions of section 1226 require that aliens, such as petitioner, be detained during removal proceedings.  (Docket Entry # 12, p. 5).  Section 1226(c) states, "The Attorney General shall take into custody any

alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2) . . . (B) . . . of this title." 8 U.S.C. § 1226(c)(1)(B). The specified subsection of this mandatory detention statute provides:

> Any alien who at any time after admission has been convicted of a violation (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

Section 1252(b)(9) channels all determinations of "'law or fact . . . arising from'" an action or proceeding "in connection with the removal of an alien" to the court of appeals as opposed to the district court. Aguilar v. U.S. Immigration and Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 9 (1st Cir. 2007) (quoting section 1252(b)(9)). This court therefore lacks jurisdiction to determine whether petitioner's offenses fall within the reach of the foregoing mandatory detention statute. Flores-Powell, 677 F.Supp.2d at 468 ("under 8 U.S.C. § 1252(b)(9), the court lacks jurisdiction to decide whether Flores's offense is covered by the mandatory detention statute, 8 U.S.C. § 1226(c)") (citing Aguilar, 510 F.3d at 11). A district court may, however, review a question that is independent of removal in addition to those that cannot effectively be handled through the available administrative

13

process. See Flores-Powell, 677 F.Supp.2d at 467 (citing Aguilar, 510 F.3d at 11); see also Hernandes v. Gonzales, 424 F.3d 42, 42-43 (1st Cir. 2005). Here, as previously noted, the petition only challenges the duration of petitioner's detention as unreasonable and unconstitutional.

IV. Mandatory Detention and Due Process

Petitioner argues that the Due Process Clause of the Fifth Amendment limits prolonged mandatory detention in removal proceedings. (Docket Entry # 1, p. 8). As previously explained, this court has jurisdiction to consider the constitutionality of petitioner's prolonged mandatory pre-removal detention. See Aguilar, 510 F.3d at 11; Hernandes v. Gonzales, 424 F.3d at 42.

Statutes that permit indefinite detention of an alien raise serious constitutional due process concerns under the Fifth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("statute permitting indefinite detention of an alien would raise a serious constitutional problem"). "Under 1226(c), not only does [pre-removal] detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Demore, 538 U.S. at 529. That said, an unreasonable delay may raise constitutional due process concerns whether it occurs before or after removal. Flores-Powell, 677 F.Supp.2d at 471 ("'"[u]nreasonable delay" can be constitutionally problematic whether it occurs pre- or

14

post-removal'") (quoting Vongsa, 670 F.Supp.2d at 123, discussing Demore, 538 U.S. at 532 (Kennedy, J., concurring) (stating that alien "could be entitled to an individualized determination as to his risk of flight and dangerousness" where the government has caused an "unreasonable delay"). Consequently, courts in this district and in the Sixth Circuit construe section 1226(c) "to implicitly require that removal proceedings and the corresponding detention be completed within a reasonable period of time, beyond which detention may not continue without an individualized determination of risk of flight and dangerousness." Flores-Powell, 677 F.Supp.2d at 471 (citing Ly v. Hansen, 351 F.3d 263, 270 (6th Cir. 2003)).

In defining a reasonable time limitation for detention during removal proceedings, the court in Flores-Powell, adhering to a Sixth Circuit case, set out the following five factors to assess prolonged mandatory detention:

> (1) the overall length of detention; (2) whether the civil detention is for a longer period than the criminal sentence for the crimes resulting in the deportable status; (3) whether actual removal is reasonably foreseeable; (4) whether the immigration authority acted promptly to advance its interests; and (5) whether the petitioner engaged in dilatory tactics in the Immigration Court.

Flores-Powell, 677 F.Supp.2d. at 471 (citing Ly v. Hansen, 351 F.3d at 271-272). Examining these factors seriatim, petitioner's mandatory detention had lasted 15 months at the time she filed this petition and presently stands at approximately 20 months.

15

In comparison, one court in this district determined that 19 months in detention exceeds the "limited period" of detention for removal proceedings contemplated in Demore.  Geegbae v. McDonald, 2010 WL 4292734, at *2 (D.Mass. Nov. 1, 2010) (citing Demore, 538 U.S. at 531).  Another court found that detention of 27 months, most of which was pursuant to section 1226(c), extended "far beyond any reasonable period" and could not continue without a bail hearing.  Bourguignon v. MacDonald, 667 F.Supp.2d 175, 176 & 184 (D.Mass. 2009).  Yet another court determined that 20 months' detention could "hardly be characterized as 'the brief period necessary' for removal proceedings" and ordered the government to conduct a bond hearing."  Vongsa, 670 F.Supp.2d at 127-129.  It is also true, however, that a large part of the delay at the outset resulted from petitioner seeking continuances to obtain counsel and thereafter to file briefs.  See Demore, 538 U.S. at 530-531 (noting that the petitioner was "detained for somewhat longer than the average-spending six months in INS custody prior to the District Court's order granting habeas relief, but [the petitioner] himself had requested a continuance of his removal hearing").  The IJ also acted promptly and efficiently in scheduling hearings, allowing only brief continuances and rendering prompt decisions.

Second, petitioner argues that the disparity between the one year of incarceration for her conviction and the length of

her ICE custody highlights the unreasonableness of her detention. (Docket Entry # 1, ¶ 38). Upon completion of her one year sentence, petitioner was transferred to DHS custody. (Docket Entry # 12, Ex. 7). The length of her civil detention therefore exceeds the length of her incarceration. See Flores-Powell, 677 F.Supp.2d at 472 (citing Ly, 351 F.3d at 271, as holding that 500 days of mandatory civil detention unreasonable as compared to only 12 months of incarceration for underlying convictions).

Third, petitioner argues that her case will "continue to be litigated for many more months" through appeals and actual removal remains unforeseeable. (Docket Entry # 1, ¶ 37). The Court in Zadvydas considered the constitutionality of indefinitely detaining a person who could neither attain nor foresee actual removal because the individual could not be repatriated to another country. Zadvydas, 533 U.S. at 690. Here, although there will be an end point when the BIA renders a decision, it is unclear whether or when that will take place. It is also unclear if petitioner will appeal the decision if unfavorable.[8]

Fourth, the IJ acted promptly throughout the proceedings. The BIA, however, took approximately four months to adjudicate DHS's appeal and petitioner's December 2010 appeal to the BIA

---

[8] This court takes judicial notice of the June 2, 2011 judgment by the First Circuit in Ortega v. Holder, No. 10-2355, dismissing the petition in that case for lack of jurisdiction.

remained pending as of the March 2011 filing of the petition. See Flores-Powell v. Chadbourne, 677 F.Supp.2d at 473 ("'although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take'") (quoting Ly, 351 F.3d at 272).  As the status of petitioner's appeal at this point in time remains unclear clarification is necessary to allow this court to render a decision on a more complete record.

This court must finally consider whether the petitioner engaged in dilatory tactics during the removal proceedings.  A large portion of the delay at the outset was attributable to petitioner seeking counsel.  (Docket Entry # 12, Ex. 16, pp. 1-20).  After the IJ's favorable decision for cancellation of removal, it was the government which appealed and triggered the ongoing administrative appellate process.  (Docket Entry # 12, Ex. 11).  The delay resulting from the first appeal and remand up to the point when petitioner filed the second appeal is not attributable to petitioner let alone any dilatory tactics.

Considering and weighing the foregoing factors, the detention at this juncture appears unconstitutional in violation of petitioner's Fifth Amendment rights and a bail hearing warranted if the BIA has not yet rendered a decision.  Respondent is therefore ordered to file a status report on or before September 21, 2011, updating what, if any, action has been taken

18

in the BIA proceeding and whether the BIA has rendered a decision on the second appeal. See, e.g., Flores-Powell, 677 F.Supp.2d at 461 (noting prior orders for the respondent to file weekly updates regarding the status of the petitioner's appeal before the BIA). In the event no action has been taken, this court will set a bail hearing to determine petitioner's risk of flight and dangerousness. See, e.g., id. at 479.

## CONCLUSION

Respondent is **ORDERED** to file a status report of the progress of the BIA proceeding to date on or before September 21, 2011. Respondent's request to deny the petition (Docket Entry # 12, p. 17) is held in abeyance pending receipt of the status report.

                                        /s/ Marianne B. Bowler
                                        **MARIANNE B. BOWLER**
                                        United States Magistrate Judge