UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

CARMEN ORTEGA,
     Petitioner,

                                           CIVIL ACTION NO.
     v.                                    11-10358-MBB

THOMAS HODGSON,
     Respondent.


                    **MEMORANDUM AND ORDER RE:**
**PETITIONER'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES UNDER**
                 **THE EQUAL ACCESS TO JUSTICE ACT**
                        **(DOCKET ENTRY # 24)**

                           **May 10, 2012**


**BOWLER, U.S.M.J.**

    Pending before this court is a motion filed by petitioner Carmen Ortega ("petitioner") for attorney's fees, costs and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (Docket Entry # 24).  Respondent Thomas M. Hodgson ("respondent") opposes the motion on the grounds that petitioner is not entitled to attorney's fees, costs or expenses because she was not a prevailing party and respondent's conduct was substantially justified.  (Docket Entry # 25).  The total fee request is $16,596.97 and the total request for costs and expenses is $259.40.  (Docket Entry # 24).

FACTUAL BACKGROUND

The pertinent facts are detailed in this court's Memorandum and Order on petitioner's petition for writ of habeas corpus. (Docket Entry # 19). Accordingly, the facts need not be repeated in depth.

Petitioner was born in the Dominican Republic in 1949 and admitted to the United States as a lawful permanent resident ("LPR") on January 29, 1969. (Docket Entry # 1, Ex. 4). In 2008, petitioner pleaded nolo contendere to two separate charges under Rhode Island General Laws section 21-28-4.01(c)(1). (Docket Entry # 1, Ex. 5 & 6). Petitioner completed her sentence for those crimes on November 17, 2009, at which point the United States Department of Homeland Security ("DHS") issued and executed an arrest warrant. (Docket Entry # 12, Ex. 6). Petitioner was in the custody of Immigration and Customs Enforcement ("ICE") beginning on November 17, 2009, pursuant to 8 U.S.C. § 1226(c) ("section 1226(c)") awaiting an administrative adjudication of deportation proceedings. (Docket Entry # 19, p. 1).

On December 1, 2009, petitioner had her first appearance before an immigration judge ("IJ") who recommended that she request a continuance to find an attorney. After requesting and obtaining a series of continuances to find counsel, petitioner obtained an attorney from the Roger Williams Law School

Immigration Clinic.  (Docket Entry # 19, pp. 3-5).  Petitioner's first attorney filed petitioner's pleadings at her sixth appearance before the IJ on February 16, 2010, which was 12 weeks after her first appearance.  (Docket Entry # 19, pp. 4-5).  Petitioner also sought continuances to file briefs.  (Docket Entry # 19, pp. 4-5).  On April 13, 2010, the IJ held a hearing on the merits on petitioner's application for cancellation of removal.  (Docket Entry # 12, Ex. 16, pp. 40-42).

On April 21, 2010, the IJ issued a decision on the merits that petitioner met her burden of proof and that she "had not been convicted of an aggravated felony, was credible in her testimony, and the positive factors outweighed the negative factors in the case."  (Docket Entry # 19, p. 5).  On June 29, 2010, DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), contending that petitioner had been convicted of an aggravated felony and her removal should not be canceled.  (Docket Entry # 19, pp. 6-7).  On November 23, 2010, the IJ issued a decision agreeing with DHS that petitioner had failed to prove that she had not been convicted of an aggravated felony and entered an order to remove petitioner to the Dominican Republic.  (Docket Entry # 19, p. 6).

On or about February 1, 2011, petitioner obtained another attorney ("petitioner's attorney"), who is petitioner's present

counsel of record.[1]  (Docket Entry # 19, p. 7).  Petitioner's attorney sent respondent a letter requesting her release "while the merits of her appeal are adjudicated" and argued that petitioner's "prolonged detention was unreasonable."  (Docket Entry # 1, Ex. 3).  Petitioner maintains that respondent never replied to that letter.  (Docket Entry # 19, p. 7).  In March 2011, petitioner appealed the IJ's November 23, 2010 order to the BIA and also filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 ("section 2241") alleging that her 15 month detention under section 1226(c) was unconstitutional.  (Docket Entry # 1).

On September 13, 2011, this court issued the Memorandum and Order.  Therein, this court posited that petitioner's detention "appear[ed] unconstitutional" and that "a bail hearing [was] warranted if the BIA has not yet rendered a decision."  (Docket Entry # 19, pp. 18-19).  Accordingly, this court ordered respondent to file a status report within one week to determine whether the BIA had made a decision on petitioner's appeal of the IJ's November 23, 2010 order.  (Docket Entry # 19, pp. 18-19).  This court further stated that if "no action has been taken, this court will set a bail hearing to determine petitioner's risk of flight and dangerousness."  (Docket Entry # 19, pp. 18-19).  On

---

[1]  Petitioner's attorney is an attorney with the Boston University Civil Litigation Program.  (Docket Entry # 24, Ex. 6).

September 21, 2011, respondent filed a status report informing this court that DHS released petitioner from immigration detention on September 20, 2011, and that the BIA had yet to decide petitioner's appeal. (Docket Entry # 20). Respondent's voluntary release of petitioner on recognizance obviated the need for a bond hearing. (Docket Entry # 24, p. 3).

On October 6, 2011, this court allowed petitioner's motion to dismiss the section 2241 petition as moot (Docket Entry # 21) and entered a final judgment dismissing the case without costs. (Docket Entry # 23). On December 9, 2011, petitioner filed the instant motion requesting attorney's fees, costs and expenses pursuant to the EAJA. (Docket Entry # 24).

## DISCUSSION

As an initial matter, respondent contends that the October 6, 2011 dismissal of the case as moot "without costs" bars an award of attorney's fees and costs. (Docket Entry # 23). Respondent invokes the law of the case doctrine. The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 53 (1st Cir. 2009) (internal quotation omitted). Thus, respondent submits that because the case was dismissed "without costs" in the order of dismissal, the law of

the case precludes an award of attorney's fees and costs. (Docket Entry # 25, pp. 2-3).

The dismissal order simply referenced "without costs," impliedly referring to costs awarded under Rule 54(d)(1), Fed. R. Civ. P. ("Rule 54(d)(1)").  Contrary to respondent's position, there was no determination of an award of attorney's fees and expenses under Rule 54(d)(2), Fed. R. Civ. P. 54(d)(2) ("Rule 54(d)(2)").  Hence, the law of the case doctrine does not preclude a determination of attorney's fees and expenses under Rule 54(d)(2).

Petitioner bases the request for attorney's fees, costs and expenses on the EAJA.  The relevant provision reads as follows:

> [A] court shall award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action[2] (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

Respondent next argues that petitioner is not a prevailing party within the meaning of the EAJA.  To be a prevailing party,

---

[2]  The EAJA's "civil action" requirement applies to habeas corpus petitions in the immigration context and thus applies to the instant case.  See Oscar v. Gillen, 595 F.Supp.2d 166 (D.Mass. 2009).

6

there must be both a "material alteration of the legal relationship of the parties" and a "judicial imprimatur on the change."  Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 604-05 (2001); see also Aronov v. Napolitano, 562 F.3d 84, 89 (1st Cir. 2009).  If a party "'succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit,'" there has been a "material alteration of the legal relationship of the parties."  Walsh v. Boston University, 661 F.Supp.2d 91, 97 (D.Mass. 2009) (internal quotations and citations omitted).

Regarding the requirement of a judicial imprimatur, a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur."  Buckhannon, 532 U.S. at 605; see also Smith v. Fitchburg Public Schools, 401 F.3d 16, 22 (1st Cir. 2005).  A party does not prevail simply because her suit is the "catalyst" for the change.  Buckhannon, 532 U.S. at 605; see also New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 30 (1st Cir. 2002) (Supreme Court "recently consigned the catalyst theory to the scrap heap . . . rul[ing] that a fee-shifting award cannot be made unless there is a 'judicially sanctioned change in the legal relationship of the parties'") (internal citation omitted).

Petitioner asserts she is a prevailing party because this court found her prolonged detention unconstitutional and the Memorandum and Order prompted respondent to release her from custody. Petitioner relies heavily on the decision of the court in Oscar. The court in Oscar found "an alien's detention to be unlawful and ordered a bond hearing . . . and found that a material change and judicial imprimatur on that change existed even though the case was subsequently dismissed as moot and the bond hearing was never held." Oscar, 595 F.Supp.2d at 168-69; (Docket Entry # 28, p. 2).

Respondent, however, correctly points out that Oscar is distinguishable because the court in Oscar actually did order a bond hearing, id., whereas this court only ordered respondent to submit a status report. (Docket Entry # 25). In particular, this court stated that it would order a bond hearing if the status report revealed the BIA had not yet decided on petitioner's appeal. (Docket Entry # 19, pp. 18-19). This court did not, however, issue an order for a bond hearing. The Memorandum and Order (Docket Entry # 19), which stated that petitioner's detention "appear[ed] unconstitutional," prompted respondent to voluntarily release petitioner from custody, thus mooting the section 2241 petition seeking her release on bail. Despite the fact that petitioner achieved the desired outcome from the litigation, she only achieved that result through

8

respondent's voluntary conduct. This is the type of "catalyst" conduct that lacks the requisite judicial imprimatur. See Buckhannon, 532 U.S. at 605. Accordingly, petitioner is not a prevailing party for the purposes of the EAJA.

In the alternative, even if petitioner were a prevailing party, the motion still fails because respondent's position was substantially justified. To obtain attorney's fees, costs and expenses under the EAJA, petitioner must be a prevailing party and respondent's position cannot be "substantially justified." 28 U.S.C. § 2412(d)(1)(B). It is the government's burden to establish "*both* that 'the agency action giving rise to the litigation was substantially justified' *and* that 'its litigation positions were substantially justified.'" Tang v. Chertoff, 689 F.Supp.2d 206, 214 (D.Mass. 2010) (quoting Kiareldeen v. Ashcroft, 273 F.3d 542, 545 (3rd Cir. 2001)) (emphasis in original); see also Schock v. United States, 254 F.3d 1, 5 (1st Cir. 2001) (courts "examine both prelitigation actions or inaction of the agency on which the litigation is based and the litigation position of the United States").

The term "substantially justified" means "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); see also Tang, 689 F.Supp.2d at 214-15 ("it is not enough for the government to have been *wrong* . . . [t]he government has to have been *very, very wrong*,

9

or so wrong that a 'reasonable person' would agree that its actions were not justified") (emphasis in original).  In addition, the court may find that the government's position "can be substantially justified even if a court ultimately determines the agency's reading of the law was not correct."  Aronov, 562 F.3d at 94 (citing Pierce, 487 U.S. at 565).  "When the issue is a novel one on which there is little precedent, courts have been reluctant to find the government's position was not substantially justified."  Schock, 254 F.3d at 6.  To show that its position was substantially justified, respondent must show that it was reasonable in law and in fact for ICE to detain petitioner for a total of approximately 20 months.  See Geeqbae v. McDonald, 2011 WL 841237, at *2 (D.Mass. March 8, 2011); Schock, 254 F.3d at 5 (1st Cir. 2001).

   The court must examine "the actual merits of the government's litigation position as to both the facts and the law."  Schock, 254 F.3d at 5; see also Pierce, 487 U.S. at 568-69.  Turning to the underlying merits, courts construe section 1226(c) "to implicitly require that removal proceedings and the corresponding detention be completed within a reasonable period of time, beyond which detention may not continue without an individualized determination of risk of flight and dangerousness."  Flores-Powell v. Chadbourne, 677 F.Supp.2d 455, 471 (D.Mass. 2010) (citing Ly v. Hansen, 351 F.3d 263, 270 (6th

Cir. 2003)); accord Demore v. Kim, 538 U.S. 510, 529-530 (2003). The court in Flores-Powell relied on Ly to set out the following five factors to consider in assessing the reasonableness of prolonged detention under section 1226(c):

> (1) the overall length of detention; (2) whether the civil detention is for a longer period than the criminal sentence for the crimes resulting in the deportable status; (3) whether actual removal is reasonably foreseeable; (4) whether the immigration authority acted promptly to advance its interests; and (5) whether the petitioner engaged in dilatory tactics in the Immigration Court.

Flores-Powell, 677 F.Supp.2d at 471.

The facts in this case evidence that the government's position was substantially justified. This court analyzed the five factors in the Memorandum and Order and concluded that the prolonged detention of petitioner "appears unconstitutional." (Docket Entry # 19, p. 18).[3] That said, however, the issue was close.

The third Flores-Powell factor weighed in respondent's favor. Notably, petitioner conceded removability.[4] In contrast, the petitioners in Flores-Powell and in Vongsa Sengkeo both vigorously contested removability. Flores-Powell, 677 F.Supp.2d at 472 (issue of whether the petitioner was deportable was

---

[3] The analysis of the foregoing five factors need not be repeated.
[4] On October 18, 2010, petitioner conceded removability before the BIA under 8 U.S.C. § 1227(a)(2)(B)(i). (Docket Entry # 12, p. 4).

11

undecided and that "added complexity is likely to extend the removal proceedings"); Vongsa Sengkeo, 670 F.Supp.2d at 128-29 (the petitioner's pending challenge to deportation was "colorable" and thus mandatory detention was unreasonable). That "added complexity," Flores-Powell, 677 F.Supp.2d at 472, is not present in the instant case due to petitioner's concession of removability. The court found in those cases that resolution of the removal proceedings was not reasonably foreseeable and that "there is no end in sight" to them, due partly to the outstanding issue of removability. See Bourquignon v. MacDonald, 667 F.Supp.2d 175, 183-84 (D.Mass. 2009). In this case, however, the endpoint of petitioner's detention was reasonably foreseeable.

As to the remaining factors in Flores-Powell, the first and second factors decidedly weighed in petitioner's favor, as explained in the Memorandum and Order. (Docket Entry # 19). It is also true, however, that a large part of the delay at the outset resulted from petitioner seeking continuances to obtain counsel and thereafter to file briefs. The fourth and fifth factors slightly favored petitioner's position as opposed to providing justification for the government's position. On balance and although close, making an individualized reasonableness determination of petitioner's detention lends itself in this instance to finding substantial justification

under the facts. Respondent therefore meets his burden of showing substantial justification under the facts.

As to substantial justification under the law, the five factor test in <u>Flores-Powell</u> does not easily lend itself to a clear cut legal decision in favor of a particular party. Rather, it requires balancing and assessing the factors for an individualized determination of reasonableness. <u>Flores-Powell</u>, 677 F.Supp.2d at 471; <u>see also</u> <u>Vongsa Sengkeo</u>, 670 F.Supp.2d at 123 (that case "centers on that bit of unfinished business in <u>Demore</u> -- whether indefinite pre-removal detention is lawful, or whether due process or § 1226(c) itself imposes some time limitation"). Notably, "No court has developed a bright-line rule for when detention under [section 1226(c)] becomes unconstitutional; rather, courts examine a number of factors . . . [which] are not always the same." <u>Note: Challenging Detention: Why Immigrant Detainees Receive Less Process Than "Enemy Combatants" and Why They Deserve More</u>, 11 Colum. L. Rev. 1833, 1877 (2011); <u>see also</u> <u>Ramirez v. Watkins</u>, 2010 WL 6269226, at *13 (S.D.Tex. Nov. 3, 2010) ("[l]ess [sic] there be any confusion, let it be clear, merely because a particular alien has been held pursuant to [section] 1226(c) longer than the five months specifically sanctioned in <u>Demore</u> does not make otherwise constitutional detention, unconstitutional"). In other words, "The legal analysis here does not involve simple arithmetic. A

qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay." Tkochenko v. Sabol, 792 F.Supp.2d 733, 740-41 (M.D.Pa. 2011).

Moreover, the issue of whether it is lawful to subject an alien to continued detention under section 1226(c) is unsettled in the First Circuit. Indeed, the First Circuit has yet to opine on the Flores-Powell factor test or whether it is appropriate for courts to use a factor test to determine whether continued detention is reasonable. This is a novel issue "on which there is little precedent [and] courts have been reluctant to find the government's position was not substantially justified" in such a situation. Schock, 254 F.3d at 6. Accordingly, although this court in the Memorandum and Order found the Flores-Powell factors weighed in petitioner's favor, respondent satisfied his burden to show substantial justification. (Docket Entry # 25, p. 9).

Finally, despite the fact that respondent's detention of petitioner "appear[ed] unconstitutional," the court still can find that respondent's position is substantially justified. See Pierce, 487 U.S. at 565. Thus, even if petitioner was a prevailing party, the instant motion would fail because respondent's position was substantially justified. Here, respondent satisfied his burden to show that his position was substantially justified under the facts and the law.

CONCLUSION

In accordance with the foregoing discussion, the motion for attorney's fees, costs and expenses pursuant to the EAJA (Docket Entry # 24) is **DENIED**.

                                        /s/ Marianne B. Bowler
                                        **MARIANNE B. BOWLER**
                                        United States Magistrate Judge